UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KYNTREL TYRONE JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN SINCLAIR *et al.*,<br><br>Defendants. | CASE NO. 3:20-cv-05017-BHS-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR: March 5, 2021 |

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, alleges that he has been deprived of soap in violation of his Eighth Amendment rights because he has an allergy to the only soap available to prisoners confined in the Intensive Management Unit ("IMU") of the Washington Corrections Center ("WCC"). Dkt. 5, at 6. Plaintiff also claims that the prison's grievance procedures violate his due process and First Amendment rights because they do not

REPORT AND RECOMMENDATION - 1

provide for a way to validate the date upon which a grievance or response is received. Dkt. 5, at 7–8. Defendants have moved for summary judgment, arguing that plaintiff has failed to exhaust his claims, that he has failed to present evidence supporting his Eighth Amendment claim, that his grievance process claims fail as a matter of law and that defendants are entitled to qualified immunity. Dkt. 35.

Plaintiff has not filed any grievance against the medical provider defendants (Palmer and Edelen) and thus failed to exhaust his administrative remedies against them; furthermore, he has failed to adduce evidence of a soap allergy sufficient to show an excessive risk to his health and safety in violation of the Eighth Amendment. Plaintiff has failed to establish the remaining defendants' personal participation in a violation of his Eighth Amendment rights. Finally, plaintiff did not exhaust available appeals in his grievance of DOC's allegedly flawed grievance procedures, and those claims also fail as a matter of law because plaintiff has no First or Fourteenth Amendment right to a particular grievance process. Accordingly, the Court recommends that defendants' motion be granted.

## BACKGROUND and PROCEDURAL HISTORY

Plaintiff initiated this matter on January 7, 2020. Plaintiff brings claims against the Washington State Department of Corrections ("DOC") Secretary, Stephen Sinclair; the DOC Intensive Management Unit ("IMU") Manager, Timothy Thrasher; two DOC Grievance Program Managers, Dale Caldwell and Ronald Frederick; a Washington Corrections Center ("WCC") nurse, John Edelen and medical provider, Joan Palmer; and a grievance coordinator at Stafford Creek Corrections Center ("SCCC"), Dennis Dahne. Plaintiff requests both monetary damages and injunctive relief—namely, that the IMU store list include a "multi-choice hygi[e]ne list," that

medical staff "stop demanding pro[o]f of allergy to receive an HSR [Health Status Report] for being allergic to anything," and that the grievance policy be updated. Dkt. 5, at 37.

Defendants served plaintiff with a *Rand* notice and copies of the motion for summary judgment and the supporting declarations of Carol Smith, Ronald Frederick, Joan Palmer and John Edelen on October 28, 2020. *See* Dkts. 35, 36, 37, 38, 39, 40. Plaintiff filed a response to defendants' motion for summary judgment on November 19, 2020. Dkt. 44. Defendants filed their reply on January 8, 2021. Dkt. 51.

**FACTS**

Plaintiff alleges that he has effectively been denied soap since January 2019 because he claims he is allergic to the only soap available on the IMU store list. Dkt. 5, at 6. Beginning in January 2019, plaintiff was housed in isolation at CBCC; in June 2019, plaintiff was transferred to WCC, where he continued housing in isolation. *Id.* As of August 2019, plaintiff was housed at SCCC. *Id.* at 2, 28. Plaintiff has filed three separate lawsuits regarding his alleged deprivation of soap at the three institutions, respectively. *See Jackson v Thrasher*, No. 20-5016 BHS-DWC ("CBCC Matter") (claims arising during confinement at CBCC); *Jackson v Berkey* 19-6101 BHS-DWC ("SCCC Matter") (claims arising during confinement at SCCC). This matter pertains to the period of Plaintiff's confinement at WCC—from June 12 to August 12, 2019. Dkt. 5, at 6; Dkt. 39, at 2.

**A.    Access to Soap**

Plaintiff asserts that although there are alternative soaps "readily available to [general] population prisoners," defendant Nurse Edelen refused to provide plaintiff with alternative soap. *Id.* at 6–7. Plaintiff further claims that both defendant Palmer and defendant Edelen refused to provide him with alternative soap because they claimed that it was impossible to be allergic to the IMU soap. *Id.* at 6. Regarding the other defendants, plaintiff alleges that defendants Thrasher,

1  Sinclair, and Caldwell control the IMU store list and are responsible for refusing to change it. *Id.*
2  at 7. Plaintiff further alleges that defendants Dahne and Frederick are also responsible for the
3  lack of soap options on the IMU store list. *Id.* at 6.

4  Defendants submitted evidence that, within days after plaintiff submitted a health
5  services kite complaining of his inability to use the soap available to WCC IMU residents, he
6  was scheduled for a sick call visit with ARNP Palmer. Dkt. 38 at 1–2. During that visit, plaintiff
7  complained he was "breaking out all over" due to a soap allergy. *Id.* at 2. However, defendant
8  Palmer saw no evidence of a rash or breakout; she states that plaintiff's statements about the
9  condition of his skin and hair "did not match what I was seeing during the encounter." *Id.* Upon
10 inquiring of IMU staff, defendant Palmer was informed that the IMU soap was hypoallergenic
11 and passed that information on to plaintiff. *Id.* She "did not develop a suspicion that [plaintiff]
12 was having any skin issues." *Id.*

13 After his visit with defendant Palmer, plaintiff continued to send health services kites
14 seeking alternative soap, to which defendant Edelen responded. Dkt. 39, at 2–3; Dkt. 39-1, at 2,
15 6. Edelen checked plaintiff's medical chart and noted both that he had recently been seen by
16 defendant Palmer for the same alleged condition and that plaintiff's medical file contained no
17 record of any diagnosis of an allergy. Dkt. 39, at 2. Defendant Edelen therefore requested that
18 plaintiff provide him with information documenting his allergy. *Id*; Dkt. 39-1 at 6. Plaintiff did
19 not request any further medical assistance. Dkt. 39, at 3. Defendant Edelen also performed daily
20 wellness checks of IMU inmates, including plaintiff, and does not recall plaintiff raising issues
21 regarding any breakouts or rashes, or seeing any evidence of such conditions. Dkt. 39, at 2.

22 Defendants have also submitted, as part of plaintiff's grievance records, notes from
23 William Aurich, DO of his medical examination of plaintiff approximately one month prior to
24

his transfer from CBCC to WCC. Dkt. 36-1 at 70–71. Dr. Aurich's notes state that his examination, conducted just after plaintiff had completed his shower, found "no signs or symptoms of allergies." *Id*. Dr. Aurich concluded that plaintiff does "not have any evidence for allergy to indigent soap at this time." *Id*. Dr. Aurich's notes state that if plaintiff were to show an allergy in the future, Dr. Aurich would issue an HSR to provide for an alternative form of hygiene. *Id*.

**B.   Plaintiff's Grievances**

Plaintiff alleges that the DOC grievance system violates the First and Fourteenth Amendments, as well as the Prisoner Litigation Reform Act ("PLRA"), because the date that a prisoner sends or receives a grievance is not documented. Dkt. 5, at 7–8. He alleges that because of this unconstitutional policy—which plaintiff also alleges that defendants Thrasher and Sinclair created—one of his grievances was denied because it was late. *Id*. at 7. According to plaintiff, if there was a documentation policy in place, officials would have realized that issues regarding the timeliness of plaintiff's appeal stemmed from a delay in the DOC providing a "notice of rewrite" to plaintiff. *Id*.

Defendants submitted the Declaration of Carol Smith, which describes the grievance process available to DOC prisoners and attaches several of plaintiff's grievances. Dkt. 36. Prisoners may file grievances challenging a wide range of issues, including among other things the application of DOC policies, actions of staff and issues affecting their living conditions. *Id*., at 2. The grievance procedure has four levels. Initial grievances are filed either as informal complaints at level 0 or as Level I grievances about policy, procedure or other inmates. *Id*. Level I grievances are appealed to Level II, where they are decided by the facility Superintendent or a designee; the Level II result is appealed to Level III, where it is decided by DOC Headquarters staff. *Id*. An initial grievance must be filed within twenty working days from the date of the

1    incident absent a valid reason for delay; appeals must be filed within five working days from the

2    receipt of a response. *Id*. Plaintiff has filed more than 145 grievances from 2014 to the present.

3    *Id*., at 3. Two of them are relevant to this matter.

   **1.  Grievance 19682351—Access to Soap**

5      On July 5, 2019, plaintiff filed grievance 19682351, stating that he "wish[ed] to grieve

6    CBCC medical [and] all HQ employees" for denying him access to an alternative to the IMU

7    soap. Dkt. 5, at 25. Plaintiff was directed to rewrite the grievance to provide more specific

8    information and to comply with a limit of one complaint per grievance. *Id*. On July 17, 2019,

9    plaintiff submitted his re-written grievance, stating that he was "grieving HQ employees

10   involved in the creation of the IMU store list [and] CBCC medical" for denying him soap,

11   shampoo and lotion. Dkt. 5, at 25. The grievance was accepted as a Level I grievance and was

12   denied in a response dated August 23, 2019. *Id*. at 26, 27. Plaintiff attempted to appeal this

13   decision to Level II but added a statement that "W.C.C. has now also denied me hygiene (sic)."

14   Dkt. 5, at 28.[1] Plaintiff's appeal was rejected for improperly introducing a new issue and he was

15   instructed to rewrite it. *Id*., at 29. The re-write instruction is dated August 29, 2019. *Id.* However,

16   plaintiff has submitted a declaration stating that he did not receive the re-write requirement until

17   September 5, 2019—the date that it was due. Dkt. 44, at 21. Plaintiff rewrote his appeal, deleting

18   the reference to WCC as instructed and also noting his late receipt of the rewrite notice. Dkt. 5,

19   at 30. Plaintiff dated his response September 5, 2019. *Id*. However, the CBCC grievance

20   coordinator deemed the grievance administratively withdrawn on the ground that it was not

---

[1] The Court notes that plaintiff dated this document August 22, 2019 which is the day *before* the date of the response he is appealing, indicating that either the response or plaintiff's attempted appeal is incorrectly dated. Because this appeal was rejected for other reasons, the date discrepancy is not material here.

REPORT AND RECOMMENDATION - 6

1  timely submitted on September 5, 2019. *Id*; Dkt. 36, at 3. The grievance coordinator asserted that

2  plaintiff's rewrite was not picked up by SCCC staff (where plaintiff was confined) until

3  September 10, 2019 and was not in the box for the prior pickup on September 6. Dkt. 5, at 30.

4  *See also* Dkt. 36-1 at 10 (email exchange between CBCC grievance coordinator and defendant

5  Dahne regarding date of pickup). Thus, the parties dispute whether plaintiff timely filed his

6  rewritten appeal of grievance number 19682351.

7        **2.**      **Grievance 19689223—Grievance Process**

8        On October 21, 2019, plaintiff filed grievance number 19689223, which grieves the lack

9  of a verification process for the receipt of grievances. Dkt. 36-1 at 75. Defendant Dahne signed a

10  response denying the grievance on October 28, 2019. *Id*. Plaintiff did not appeal this grievance.

11  Dkt. 36 at 3.

12        **MATERIALS TO BE CONSIDERED**

13        Plaintiff's complaint is signed under penalty of perjury. Dkt. 9, at 13. Therefore, his

14  complaint's allegations are considered as evidence in opposition to summary judgment, but only

15  if they are based on personal knowledge and set forth facts that would be admissible in evidence.

16  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). The Court also considers the exhibits

17  attached to plaintiff's complaint, as well as the materials, including his Declaration, that were

18  attached to plaintiff's summary judgment response.

19        Defendants request that the Court take judicial notice of the substance of two declarations

20  attached to their Reply that were originally filed, respectively, in the CRCC Matter and the

21  SCCC Matter. Dkt. 51, at 2 n.3; Dkt. 51-1; Dkt 51-2. Defendants' request is denied. While the

22  Court may take judicial notice of the existence of these documents, the fact that they were filed

23  and their filing dates, it may not take judicial notice of any facts set forth in the documents

24

themselves. *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."). Furthermore, "[i]t is well established that new arguments and evidence presented for the first time in Reply are waived." *Docusign, Inc. v. Sertifi, Inc*., 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006), *citing United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000). Accordingly, the Court will not consider the Declaration of William Aurich, DO (Dkt. 51-1) or the Declaration of ARNP Bobbie Berkey (Dkt. 51-2). The Court notes that among the materials defendants submitted with their opening brief are notes prepared by Dr. Aurich during the course of an investigation of one of plaintiff's grievances. Dkt. 36-1, at 70–71. This document was properly submitted, was not challenged by plaintiff, and will be considered.

## STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether particular facts are material and whether there is a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *Anderson*, 477 U.S. at 248. Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.* Where there is a

complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed. . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249–50. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

## DISCUSSION

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (1) the conduct complained of was committed by a person acting under color of state law and that (2)

the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

**A.   Exhaustion**

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C.A. § 1997e(a) provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). All "available" remedies must be exhausted. *Id.* Exhaustion must be proper, meaning that the prisoner must complete the administrative review process in accordance with the applicable rules. *Woodford v. Ngo*, 548 U.S. 81, 92–95 (2006). Plaintiffs must not only file an appeal and exhaust all administrative appeals, but also must do so in a timely manner. *Id*. at 94. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

Defendants bear the initial burden of showing that there was an available administrative remedy and that plaintiff did not exhaust that remedy. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014). Once that showing is made, the burden shifts to plaintiff, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172; *see also Ross v. Blake,* 136 S. Ct. 1850, 1859–60 (2016) (setting forth examples of when administrative remedies would be unavailable).

**1.      Exhaustion of Conditions of Confinement Claims Against Defendants Palmer and Edelen**

Plaintiff has not filed a grievance against defendants Palmer and Edelen, nor has he filed a grievance contesting his alleged denial of soap at WCC. Plaintiff's soap-deprivation grievance, number 19682351, expressly states that he is grieving "HQ employees involved in the creation of the IMU store list [and] CBCC medical" for deprivation of soap. Dkt. 5, at 25. It was sent to CBCC and was investigated and decided by CBCC staff, whose investigation focused only upon events at CBCC. *Id*.; Dkt. 36-1 at 12, 15–16. Plaintiff's attempt to add WCC to the grievance in his appeal was rejected and plaintiff's re-write excluded any reference to WCC. Dkt. 5, at 29, 30. Defendants have met their initial burden of establishing plaintiff's failure to exhaust as to defendants Palmer and Edelen.

Plaintiff's response appears to argue that Grievance 19682351 meets his exhaustion requirements, asserting that the lack of a time-stamp process to confirm he timely appealed rendered the grievance process "unavailable" to him. Dkt. 44, at 1–2. But plaintiff's argument ignores the fundamental issue that the grievance never raised claims against Palmer and Edelen, or WCC. While a grievance need not assert "every fact necessary to prove each element of an eventual legal claim," it must provide sufficient information "to alert the prison to a problem and facilitate its resolution." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Here, WCC and its staff were not provided the notice that the exhaustion requirement demands because plaintiff's grievance was addressed to, and resolved solely by, CBCC staff. As the grievance fails to exhaust claims against defendants Palmer and Edelen, the issues plaintiff raises regarding whether he met the appeal deadline are immaterial.

Plaintiff also asserts that on January 17, 2020, he filed a "similar" grievance, number 20694981, against WCC medical staff. Dkt. 44 at 2–3. Plaintiff does not attach a copy of this

REPORT AND RECOMMENDATION - 11

grievance or provide evidence, other than his own assertion, that it was filed. However, even if the Court accepts plaintiff's unsupported allegation as true, the terms of the allegation itself disclose that the new grievance was untimely. Plaintiff asserts that he filed the grievance on January 17, 2020, but his confinement at WCC ended in August, 2019 and the challenged actions by Palmer and Edelen occurred in July and August, 2019. Dkt. 38 at 1–2; Dkt. 39 at 2–3. Thus, six months elapsed between the behavior challenged in the new grievance and its alleged filing date—far in excess of the 20-day time limit required by DOC's grievance policy. Dkt. 36 at 2. The Supreme Court has held that it is not enough that a prisoner file an untimely grievance and thereby "exhaust" his available administrative remedies because he missed the deadline and now has no further administrative options— rather, he must *properly* exhaust his administrative remedies before filing his claims in federal court, including adhering to administrative rules regarding the deadline for filing a grievance. *See Woodford*, 548 U.S. at 88.

The Court recommends that the claims against Palmer and Edelen be dismissed for failure to meet the exhaustion requirement.

**2.    Exhaustion of Conditions of Confinement Claims Against Sinclair, Thrasher, Caldwell, Frederick and Dahne**

Unlike defendants Palmer and Edelen, the conduct of the remaining defendants is arguably addressed by Grievance 19682351. Plaintiff asserts that he is grieving "HQ employees involved in creating the IMU Store list" and that is what he has alleged against the remaining defendants in his complaint. Dkt. 5, at 26, 6. Defendants contend that plaintiff failed to exhaust this grievance by missing the appeal deadline. Dkt. 5, at 30; Dkt. 36, at 3; Dkt. 36-1, at 10. Plaintiff, however, has submitted a declaration testifying that he submitted his rewritten appeal within the deadline. Dkt. 44, at 21. The conflicting testimony presents a disputed issue of material fact that prevents summary judgment dismissing plaintiffs' soap-deprivation claims

against defendants Sinclair, Thrasher, Caldwell, Frederick and Dahne on exhaustion grounds. But, as noted below, defendants' motion for summary judgment should be granted on other grounds, despite this factual dispute.

### 3. Exhaustion of Grievance Process Claim

Plaintiff filed grievance 19689223 on October 22, 2019, complaining that DOC's grievance process was defective because it lacked a method to verify compliance with deadlines. Dkt. 5, at 34. Plaintiff received a decision on this grievance on October 28, 2019. *Id*. However, plaintiff never filed an appeal. Dkt. 36, at 3. To properly exhaust a claim, a prisoner is required not only to file a grievance, but also to pursue all available appeals. *Woodford*, 548 U.S. at 94. Plaintiff has failed to file Level II or Level III appeals, and his claims regarding the grievance process should therefore be dismissed for failure to exhaust.

### B. Conditions of Confinement Claims

To state a claim for unconstitutional conditions of confinement, a plaintiff must establish that a defendant's acts or omissions have deprived him of "the minimal civilized measure of life's necessities" and that the defendant acted with deliberate indifference to an excessive risk to the prisoner's health or safety. *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer,* 511 U.S. at 834). "The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), *cert. denied,* 532 U.S. 1065 (2001). To establish a violation of the Cruel and Unusual Punishment Clause, a prisoner must make an "'objective showing' that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation". *Id*. (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, a prison official must have a "sufficiently culpable state of mind." *Id.* at 834 (internal quotations omitted). "In prison-conditions cases th[e] state of mind is one of 'deliberate indifference' to

1  inmate health or safety[.]" *Id.* (*citing Wilson*, 501 U.S. at 302–03). A prison official does not act
2  with deliberate indifference "unless the official knows of and disregards an excessive risk to
3  inmate health or safety." *Farmer,* 511 U.S. at 837.

4      The Ninth Circuit has held that "[i]ndigent inmates have the right to personal hygiene
5  supplies such as toothbrushes and soap," and that denial of these items could state a claim for
6  lack of sanitation. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *opinion amended on*
7  *denial of reh'g,* 135 F.3d 1318 (9th Cir. 1998). Other Circuits have found a temporary
8  deprivation of hygiene supplies does not rise to the level of an Eighth Amendment violation. *See*
9  *Harris v. Fleming*, 839 F.2d 1232, 1234–36 (7th Cir. 1988) (no violation when inmate was
10 deprived of soap, toothbrush, and toothpaste for ten days), and *Williams v. Delo*, 49 F.3d 442,
11 445–46 (8th Cir. 1995) (denial of toothbrush, toothpaste, soap, and deodorant for four days was
12 not a deprivation of the minimal civilized nature of life's necessities). However, deprivation of
13 hygiene items for an "extended period of time" is more than a temporary deprivation and can
14 meet the objective prong of the Eighth Amendment analysis. *See Garcia v. Cluck*, No. 12-CV-
15 718 AJB NLS, 2012 WL 6045908, at *3 (S.D. Cal. Nov. 2, 2012), *report and recommendation*
16 *adopted,* No. 12CV718 AJB NLS, 2012 WL 6045937 (S.D. Cal. Dec. 5, 2012).

17     **1.**    **Defendants Palmer and Edelen**

18     It is undisputed that WCC provides soap to residents in its IMU unit. Dkt. 5, at 1, 16;
19 Dkt. 36-1 at 19–21. Plaintiff contends that he is deprived of soap only because he claims he is
20 allergic to the product that is provided. But plaintiff has failed to come forward with any
21 evidence, aside from his own bald assertion, that he has such an allergy. While this was
22 sufficient at the pleading stage, where plaintiff's allegations were taken as true, at the summary
23
24

REPORT AND RECOMMENDATION - 14

1  judgment stage plaintiff must come forward with evidence to support his claim. *Celotex*, 477
2  U.S. at 322–23.

3　　　　Defendants have submitted evidence that plaintiff was examined by at least two medical
4  professionals who found no sign of a soap allergy. Dkt. 38, at 2; Dkt. 36-1 at 70–71. Plaintiff
5  bears the burden to rebut this evidence and has failed to do so. The Ninth Circuit has affirmed
6  grants of summary judgment against prisoners under these circumstances. In *Wilhelm v.*
7  *Enenmoh*, 608 F. App'x 513, 514 (9th Cir. 2015), the Ninth Circuit held that plaintiff failed to
8  establish a serious medical need for alternative soap or the deliberate indifference of a prison
9  doctor who denied a prescription for non-prison-issued soap. The district court had found that
10 plaintiff was "not qualified to provide a medical opinion as to an alleged need for medical soap"
11 and plaintiff's medical records did not provide any evidence plaintiff was allergic to the prison-
12 provided soap or required a prescription for medicated soap. *Wilhelm v. Enenmoh*, No. 1:10-CV-
13 01663-LJO, 2013 WL 3212367, at *6–7 (E.D. Cal. June 24, 2013), *aff'd,* 608 F. App'x 513 (9th
14 Cir. 2015). In light of the lack of any allergy diagnosis, there was no evidence of deliberate
15 indifference by the doctor and plaintiff failed to establish an Eighth Amendment claim. *Id*. *See*
16 *also Martin v. Morris, No. CV 10-5232-PSG PJW, 2013 WL 4588735, at *2–3 (C.D. Cal. Aug.*
17 *28, 2013), aff'd,* 586 F. App'x 358 (9th Cir. 2014) ("While Plaintiff contends that he could not
18 maintain his hygiene because he is allergic to prison soap and could not afford special soap,
19 Defendant doctors never diagnosed him with a soap allergy;" therefore, defendants were entitled
20 to summary judgment because "Plaintiff bears the burden of establishing that he was allergic to
21 prison soap and needed special soap to maintain his hygiene and he failed to do so here"); *Parks*
22 *v. McDaniel*, No. 03:06-CV-00095LRHVPC, 2007 WL 2891499, at *10 (D. Nev. Sept. 28,

23
24

REPORT AND RECOMMENDATION - 15

1  2007) (An allegation of an allergy to soap, without proof of the allergy or the harm it inflicts, is
2  not enough to meet the "objectively, sufficiently serious" deprivation requirement.).

3  To the extent that plaintiff's claims against defendants Palmer and Edelen are not
4  dismissed for failure to exhaust, they should be dismissed because plaintiff has failed to meet his
5  burden to establish an Eighth Amendment violation by defendants Palmer and Edelen.

6  **2.    Defendants Thrasher and Sinclair**

7  Plaintiff alleges defendants Thrasher and Sinclair are liable because of their positions as
8  supervisors and/or DOC executives. Dkt. 5, at 1. However, a § 1983 action may not be brought
9  against a supervisor on a theory that the supervisor is liable for the acts of his or her
10 subordinates. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*
11 *of City of New York*, 436 U.S. 658, 691 (1978). To state a claim against any individual defendant,
12 plaintiff must allege facts showing the individual defendant participated in or directed the alleged
13 violation or knew of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152
14 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Sweeping conclusory
15 allegations against an official are insufficient to state a claim for relief. *Leer v. Murphy,* 844 F.2d
16 628, 634 (9th Cir. 1988). Further, a § 1983 suit cannot be based on vicarious liability alone but
17 must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton, Ohio*
18 *v. Harris*, 489 U.S. 378, 385–90 (1989).

19 Plaintiff's complaint provides only conclusory allegations attempting to connect
20 Defendants Thrasher or Sinclair to the alleged constitutional violations. *See* Dkt. 5, at 2. ("I was
21 denied soap by Timothy Thrasher, Stephen Sinclair, . . . who control the IMU Store lists").
22 Plaintiff does not allege that defendants Thrasher or Sinclair were aware of plaintiff's complaints
23 regarding the denial of soap, to which different DOC staff responded. *See* Dkt. 5, at 25. Plaintiff
24

REPORT AND RECOMMENDATION - 16

1 does not establish that defendants Thrasher or Sinclair were on notice that plaintiff was allergic
2 to the IMU soap. Plaintiff's summary judgment response submits no evidence against defendants
3 Sinclair or Thrasher to bolster the conclusory allegations of the complaint; instead, plaintiff's
4 response regarding his Eighth Amendment claims addresses only the conduct of defendants
5 Palmer and Edelen. Dkt. 44 at 3–4. Plaintiff has failed to establish that defendants Sinclair and
6 Thrasher personally participated in the alleged deprivation of soap. The Court therefore
7 recommends plaintiff's claims against them be dismissed.

### 3. Defendants Dahne, Caldwell and Frederick

Plaintiff's claim against Grievance Coordinator Dahne for the alleged denial of soap appears to be premised solely upon Dahne's routing of grievances and appeals to the appropriate higher-level staff at a different institution. Dkt. 5, at 1. Plaintiff does not allege that defendant Dahne had any direct involvement in denying his soap-related grievances or any authority to prevent any future harm related to the alleged denial of soap. *See e.g.* Dkt. 5, at 28, 29 (defendant Dahne's name is stamped on Grievance No. 19628351 indicating he routed plaintiff's appeal from SCCC to CBCC staff). This is manifestly insufficient to establish personal participation in the alleged violation. *Leer*, 844 F.2d at 634.

Plaintiff's evidence related to defendants Frederick and Caldwell is limited to the grievances attached to the complaint wherein defendant Frederick signed a letter to plaintiff on behalf of Dale Caldwell indicating plaintiff's appeal of Grievance No. 19682351 would remain administratively withdrawn. Dkt. 5, at 32. Plaintiff has submitted no evidence indicating that defendants Frederick or Caldwell made any determinations about the merits of plaintiff's complaints and alleged denial of soap; rather, these defendants merely indicated that plaintiff's appeal was administratively withdrawn because of a timeliness issue. *Id.* Defendant Frederick

has submitted a declaration stating that he was unaware of any alleged denial of soap, and that the DOC headquarters grievance office (where both Frederick and Caldwell worked) has no responsibility for prisoner hygiene products or any inmate store lists. Dkt. 37 at 2.

Plaintiff has submitted no evidence that defendant Dahne, a Grievance Coordinator at SCCC or defendants Frederick and Caldwell, Grievance Program Managers at DOC headquarters in Olympia, had any authority or control of the issuance of plaintiff's soap at WCC. Dkt. 5. *See Pena,* 976 F.2d at 471. Plaintiff has submitted no evidence that these defendants personally participated in the alleged violation; the Eighth Amendment claims against them should therefore be dismissed.

**C.  Grievance Procedures**

Plaintiff alleges his constitutional rights under the First and Fourteenth Amendment were violated because the grievance process does not include a method for recording the date and time when a grievance or a response is filed. Dkt 5, at 7–8. Defendants argue plaintiff has failed to allege personal participation and failed to allege a specific right to participate in the grievance process. Dkt 35, at 7–8.

"It is well-established that, among the rights [prisoners] retain, prisoners have a First Amendment right to file grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Further, even during incarceration, prisoners retain their Fourteenth Amendment due process protections. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). However, "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Prisoners "lack a separate constitutional entitlement to a specific prison grievance procedure," and so a stand-alone claim based on a deprivation of the grievance procedure does not implicate due process. *Ramirez*, 334 F.3d at 860 (citing *Mann*, 855 F.2d at 640).

1    Here, plaintiff alleges his grievances were unlawfully rejected. Dkt. 5, at 7. Plaintiff does
2    have a right to file grievances. *Brodheim,* 584 F.3d at 1269. However, he does not have a right to
3    any specific grievance process. *Ramirez,* 334 F.3d at 860. Plaintiff has alleged that his grievances
4    were wrongfully denied; however, the allegations indicate plaintiff was able to access the
5    grievance process and he filed several grievances that were addressed through the levels of
6    appeal. Dkt. 36, at 3. Simply because plaintiff disagrees with the disposition of his grievances
7    and appeals does not indicate any constitutional violation or wrongdoing on the part of
8    defendants. Because plaintiff has no standalone right to any particular grievance process, he has
9    not stated a claim. Therefore, to the extent that these claims are not dismissed for failure to
10   exhaust, the Court recommends dismissal of plaintiff's First and Fourteenth Amendment claims
11   as a matter of law.

**D.   Qualified Immunity**

Because the Court recommends dismissal of all of plainitff's claims on other grounds, it does not reach defendants' argument that they are also entitled to qualified immunity.

**IFP STATUS ON APPEAL**

*In forma pauperis* status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); see also 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Here, as noted, plaintiff has failed to exhaust his administrative remedies as to defendants Palmer and Edelen and as to his claims regarding the grievance process, and those claims also fail on the merits. Plaintiff has also failed to establish the personal participation of defendants

1  Sinclair, Thrasher, Caldwell and Frederick in the alleged denial of soap. Accordingly, the

2  undersigned recommends that plaintiff's *in forma pauperis* status be revoked for purposes of any

3  appeal.

## CONCLUSION

The undersigned recommends that defendants' motion for summary judgment (Dkt. 35) be **granted;** plaintiff's claims should be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 5, 2021**, as noted in the caption.

Dated this 18th day of February, 2021.

J. Richard Creatura
United States Magistrate Judge